Good morning. My name is Mike Black. I represent the Tidymans corporate entities. I'll be taking eight minutes of the time today. Seven minutes of the time will be for the plaintiff appellate, Mr. Amsden. Madam Clerk, would you start the clock at eight and so forth? Thanks. And I hope to reserve some time, but I recognize that I'm in charge of my own clock. May it please the Court, Counsel, I think at the outset the thing that I'd like to bring to the Court's attention is a threshold issue. The Tidymans LLC entity is withdrawing any claims that it should be substituted as a party in this matter. I'm going to focus my arguments on Tidymans Management Services, Inc., the entity that was the corporation that was always a nominal plaintiff in this action since the time of the second amended complaint, and assert no further claims and withdraw any appeal with respect to the LLC. As far as basic background, Tidymans Management Services, Inc., TMSI, have been around for a number of years operating grocery stores in Montana, eastern Washington, north Idaho, southern Wyoming. What's left at this point, Counsel? It's my understanding that the company is insolvent. Are there any assets left? The only asset that is left is this litigation. Is there some insurance at issue?  Yes. So that's what we're fighting over, the insurance money. Well, yes, Your Honor. I mean, I think that the entire point, at least of the current management of TMSI, is that the interested directors and officers failed to properly dissolve the corporation, marshal all the assets, and liquidate them. And that's what we're trying to do. So the stake here is the policy limit on the directors' and officers' liability insurance? Yes, Your Honor. Got it. Yes, Your Honor. The basic facts? The theory was they should have sold out instead of merging. That's right. They should have pursued other opportunities. And based upon misrepresentations that were made to the shareholders and employees and virtually everybody else, that they should not have gone through with this deal. Clearly, the financial conditions were changing. They were changing rapidly. That the equity in this corporation, because it was a sale of all or substantially all of the assets into this new entity, would be best served in a different type of transaction. And by virtue of... I guess you've never gotten to litigate whether they should have sold out instead of merging because of the problems of demand and not the ESOP or the individuals not being the shareholders because the ESOP was and so forth. And that's what we were hoping. Various procedural blocks. Yes, Your Honor. I mean, the opportunity to litigate this case... So all that's before us now is not whether they should have sold out instead of merging. It's just the procedural blocks. That's right, Your Honor. And the stock ownership. The only question that I think is truly before this Court, once we discard the limited liability company, is whether or not the corporation should have been allowed to substitute because it's the real party in interest to pursue the claims against the directors and officers. That was really the only issue. I mean, there were always... In a way, it's the nominal party in interest because the individuals are the real party in interest. I think that's what the district court said. And I think the district court was wrong. I mean, under Ninth Circuit authority and virtually every other authority that I can find... As a matter of fact, I can't find anything otherwise. Well, who will get the money if... The corporation gets the money. It's always been a corporate claim. So Negroni and these other people that wound up losing their stake in the ESOP won't get any money regardless? Well, they may get it depending upon, you know, how we resolve the corporation's affairs because obviously when you're dissolving a corporation, you have to take care of all of its liabilities. Creditors come before equity. This is a corporate claim. This is going to be corporate money. So once we get to the point, if we recover anything, we have to go back and revisit whether there are creditors out there that still haven't been satisfied. And then if there's equity left, it flows downhill. But it's absolutely clear that these are corporate funds. So has there been a bankruptcy proceeding? Is there one open? There's never been a bankruptcy proceeding. The corporation was administratively dissolved. And I think that one of the things that is fascinating about, you know, some of the hurdles that have been thrown up here by defendants is that by virtue of terminating the ESOP and failing to have any corporate meetings at any point in time after this litigation was commenced, I don't think that any decision could have been made until after a new administrative committee was put in place to have a shareholder meeting to elect enough directors to have a quorum. Is the real party in interest question important where there's the assertion that there's a double derivative standing here? It is. It is whether it's double derivative or derivative because the real party in interest and the sole real party in interest under Goldman, which is the law of the circuit for the last 30 years, is the corporation. The question is, is whether or not an entity or a person with an equitable interest has the opportunity to assert the claim that is the claim of the corporation. And that's where I think the district court got it wrong, is that by defining the plaintiffs as the real parties in interest, and Mr. Ampson will get to this, he dictated the result that it would be preempt. There are only real parties in interest with respect to ESOP and ERISA type claims. The real party in interest always with respect to the corporate litigation is the corporation. The only question is whether or not somebody else has an opportunity to assert those claims. And we believe that they never had that opportunity. Well, ultimately, it comes down to really one issue.  Either the plaintiffs, by virtue of having nobody to make a demand upon, whether it's an ESOP fiduciary or a quorum of the board of directors, which didn't exist, either there's demand futility or it's been cured by the corporations moving in and attempting to be named as the real party in interest and substitute. I thought I read in the record there were two remaining directors, the lady from SuperValue. That's the LLC. SuperValue has no equitable interest in the corporation. The only remaining director was Mr. Davis. So I think it was an abuse of discretion not to allow substitution. I'll reserve my last minute for rebuttal. Thank you. Good morning. May it please the Court. My name is John Ampson, and I represent 45 of the employee shareholders who were laid off in October of 2006 unceremoniously without notice and were never given an explanation of what happened to the value of their shares that went from $160 a share to $0 a share after the SuperValue transaction. Now, tell me about the demand. The brief was a little hard to follow on this, so I may not have it right, but it looked to me as though the brief was arguing that various things should have been understood as a demand, even though they weren't technically. And my thought was when disputes get complicated, there's a flood of letters and it's always hard to figure out what's what or even what you have in the file, and it's so easy to just send a letter labeled demand or saying in the first paragraph, this is a demand, and to just state your demand, that it's hard to see why it shouldn't be required. Your Honor, we would like to have made a demand. The District Court only allowed between October of 2007 and the end of December 2007 for us to investigate the underlying claim. It was the only time allowed for discovery. We asked immediately in discovery who were the officers and directors, and Mr. Davis wouldn't tell us. We would like to have put before the Court an adequate record on why the answer to that interrogatory, the persons identified in that interrogatory, would have not been disinterested and independent as Washington State law requires. We were precluded from doing that. I mean, you couldn't just, there isn't some filing? I thought with ESOPs there was some kind of public filing where you could find out who the directors were. There is a public filing in the Secretary of State at Washington. It was dated in May of 2007, and it only listed Mr. Davis. So we had to assume, despite the nondisclosure, we had to assume that Mr. Davis was really the only person calling the shots. There wasn't a corporation, there wasn't a plan. He was basically the last person standing, for the lack of a better term. Did he send a demand to him? No, he did not. Mr. Davis is quintessentially the interested party in this case. Sure. But you get that all the time. Lawyers are always doing it to each other, sending demands and saying, I know you're not going to like this, but when things get real nasty with lawyers, they say, I know you're not going to like it, but you better tell your malpractice insurer. We made a lot of different types of demand. The particular demand that he institute a $30 million action against himself, seeking his personal liability, we did not make, because of his level of interest in the underlying super value transaction. Remember, Mr. Davis spearheaded the effort to change the rules during the time the super value transaction was. Why not set him up with a demand? I mean, you know he's going to turn down the demand. Why not set him up just the way you set up an insurance company for excess? Keeping in mind, we weren't sure. We assumed that Mr. Davis was the last man standing, but we didn't know that. We would have liked to make a complete demand based on, to all the officers and directors we knew at the time. None of them were disclosed to us, and it seems a bit unfair that we can't even create the record when they don't participate in discovery and tell us who the officers and directors were. Did you file a motion to compel? No, we did not. The discovery we got was in October of 2007. Our deadline to amend was two months later. We had 100,000 documents to review. We reviewed that, and the court may notice, for example, the Zachary Scott letter on the top left-hand corner, that's 34.1 in the record, has a date of December 26, 2007. That's actually the date it was printed because we got an electronic copy. This document was not found in the Tidyman's documents. We got it from Zachary Scott, and that's the information that wasn't disclosed. So the reason you didn't do a motion to compel is by the time you got through the mountain of documents, it was too late. That's correct, and Judge Molloy has a very, very busy criminal schedule, and if we can get any information from the defendants, we choose to get that information from them first. Wasn't he in the middle of that Libby Montana case? Unfortunately, the W.R. Grace trial was scheduled for about six weeks after the trial of this case. Wasn't your threshold question as to whether or not Judge Molloy should have kept the case at all? There was the original venue dispute. There was a dispute about venue that hasn't been appealed. I'm still hung up on the demand. It seems to me it's just great to make a demand on somebody who's not going to comply with because then you have another breach of fiduciary duty claim because he didn't comply with the demand. And Washington is not a universal demand state. As we know from NRA 5N networks, it's a futility demand state, and the relevant standard is the last sentence of paragraph 15 of that case, and if we can establish a reasonable doubt that, in this case, Mr. Davis would have exercised independent and disinterested business judgment in responding to the demand, then the demand is futile, especially with Mr. Davis' So you really don't need to set somebody up with a demand the way you set up an insurance company with a policy limits demand. Exactly. It does you no good except to answer your question. And no harm not to. Exactly. Do I wish I would have done it certainly would allow me to answer your question quickly and we could be over with it, but given the fact that we didn't know if there was another officer director out there, if there were two officers or directors out there that were independent from Mr. Davis, then we would have made a demand and understood that if they were going to exercise independent and disinterested business judgment in responding to the demand, we need to understand what that judgment was. But here, at most, we understood it was Mr. Davis, a single person, acting without a quorum. May I reserve another minute for Ruttle? Thank you. Thank you, Counsel. Counsel. Good morning. May it please the Court. My name is Doug Henson, and I'm here representing the defendants, Mr. Davis and Mr. Maxwell, who are appellees. I want to start, if I can, with where you just finished off with this issue of demand and who the demand should have been made upon. I think Counsel said that they wanted to find out who all the officers and directors are, and that was the reason why they didn't make a demand at all was because they didn't know who all of the officers and directors are. What the court ultimately found, or the district court ultimately found, that they didn't do was make a demand on the administrative committee of this ESOP. Because this was a double derivative claim, because they are not shareholders, the law says they have to make a demand not just on the company itself, but also on the ESOP, the shareholder. And that's what the court found, that they really never made any effort or attempt to do is to make any demand on the administrative committee. And could they find out who that was? Absolutely, Your Honor. Is it a public filing? It is not a public filing, but one of the plaintiffs actually served on that administrative committee. I served on the judicial council of the circuit a few years ago, and I don't know who's on it now. I understand, Your Honor. But the people that were on it were not part of the officers and directors of the company. They were part of these non-officer and director individuals who were, again, not affiliated with any of the defendants in the case. Wait, I'm getting lost here. What I'm looking for is a list. You're saying they should have made a demand on the administrative committee. Yes, sir. So I'm thinking, okay, fine. I'm in their shoes, so I've got to make a demand on the administrative committee. So first I go to the secretary of state filings. It's not there. Where do I get the list of names and addresses? All you have to do, Your Honor, is look at what we call the SPD, the summary plan description for an ESOP, which will give you the address and the person to whom to direct a demand. Where do you get the summary plan description? That is given to every ESOP participant when they join the plan. It's also available upon request from the employer. But they could have, in fact, sent. But their employer is gone. Their employer is out of business. Well, but they had it before the employer went out of business, Your Honor. They had that document before the employer went out of business. They could have asked for it in discovery. Some of them should have had the ESOP booklet. Exactly. And I'm sure they could have asked for that and probably did ask for that document in discovery in the case. It's not a mystery or a secret. They just did not make a demand on the administrative committee, quite frankly, because that group was not part of the group that they were targeting in this case. That group was, as I said, non-officers and directors. Who they were trying to go after was the officers and directors. The administrative committee isn't Davis and this other fellow? It's not, Your Honor. It's not. As we demonstrated in our papers, the administrative committee, at the time of the events, even at the time of the winding up, did not include any of the defendants in this case. And, in fact, at one time included one of the plaintiffs in this case. And also included individuals who helped the plaintiffs with their case, submitted an affidavit for them in support of their case. So these were not. . . So you're saying that would not necessarily have been futile? I do not think it was futile. And the court expressly found, exercising its discretion, that that would not have been futile and that, therefore, demand was not excused. That was, in fact, the finding of the district court on this issue, that these people did have the right to bring a double derivative claim, but in order to do that they had to make demand both on the company and the ESOP and they never demonstrated futility with regard to making the demand on the ESOP because they could have made it on the committee. But they chose not to. Counsel, given the fact that F5 networks came down after the district court ruled, what effect, if any, should that have on our decision as to whether or not we should remand it to give the district court an opportunity to reconsider? Your Honor, I wish I could say I was familiar with that case, but I am not. Is it a . . . It specifically declares that Washington is a demand-futility state. Okay. All right. It answers the question that apparently was unresolved at the time Judge Malloy ruled. I think the issue of demand and futility, though, really doesn't matter here because it's admitted that they couldn't make it. So you would concede that even though it's now clear that that standard applies, they don't need it? That's exactly right. That's exactly right. Why shouldn't the case go back so they can litigate whether it would be futile or not? Simply because, Your Honor, this case is over. There's no basis to send it. No, there's no basis to send it back. They did not meet the standard that is required under Washington law in order to bring a double derivative claim. The court exercised its discretion and so held, and therefore they don't have the right to pursue this one. Well, there were two reasons why. One was no demand, but that depends on futility, as we now know, if we didn't before from that Washington case. Yes, sir. And the other is that they weren't shareholders because the ESOP owned all the shares, but that's probably not correct because there are circumstances where the double derivative notion applies, and this may or may not be one. The point is, Your Honor, they had the right, these individuals as participants in the ESOP, had the right to bring a double derivative claim, but for the preemption issues that we're not talking about yet. You set those aside. But they did have a double derivative claim that they were pursuing and they did pursue. It's just that they did not pursue it in the correct way because they did not make the demands that were required. They were not shareholders, though, Your Honor. Why does the record establish that there's no genuine issue of fact on futility of such a demand? It's not a genuine issue of fact standard. It's within the court's discretion to decide whether or not they have met the requirement to show futility. And here, the court found that they did not meet that requirement because they did not, in fact, submit evidence or argument to explain why they had not made a demand on this administrative committee. And so the court found that they had not, in fact, met the procedural requirement in order to bring a double derivative claim. Could I ask you something about the preemption? Yes, Your Honor. Frankly, I didn't understand why a preemption would apply to the double derivative claim. The reason is this, Your Honor. The only way for these individuals, the plaintiffs in this case, to bring the double derivative claim is to bring that through the ESOP. In other words, their only role is as ESOP participants. And the cases that they cite are all different in the sense that all of those other cases involve shareholders who are bringing derivative claims, not just shareholders who own through an ESOP, but shareholders who own in other ways. Here, the only basis for these individuals to bring a corporate claim of any kind was because they were participants in the ESOP. And that is why this case is preempted. It's what distinguishes it. You didn't get the therefore there. You'll just have to simplify it for me. Well, it distinguishes it. If I can give an example of the Ninth Circuit case that they purport to rely on, it's the Abraham case. In that case, Your Honor, what we had was a situation where individuals who were plaintiffs in the case had sold their shares to the ESOP and taken back notes. And then those note holders in that capacity brought a corporate claim against the officers and directors, essentially a double derivative type of claim or a derivative type of claim, because of their capacity as note holders. And what the court said is, because you're a note holder and not an ESOP participant, that's not preempted. Here, the only capacity these people have to bring a corporate claim is in the capacity as ESOP participants. And that's why it's preempted. They have acknowledged in their papers, Your Honor, that the facts supporting their claims under ERISA and the facts supporting their claims under the corporate claim, the state law claim, are exactly the same facts, exactly the same theories. It is, in fact, a breach of fiduciary duty, as you noted, Judge, earlier. It is a breach of fiduciary duty, arguably, for an ERISA fiduciary not to bring a corporate claim if, in fact, that is a valid asset of the company and it's imprudent not to do so. That could be a breach of ERISA fiduciary duties. In fact, they made that ERISA claim, that very ERISA claim, against my clients, saying that my client, Mr. Davis, was an ERISA fiduciary, had an obligation to bring that corporate derivative claim, did not, and therefore breached his ERISA fiduciary duties. So it impacts both the relationships at issue under ERISA, this participant fiduciary relationship, and it also violates the scheme for remedies under ERISA. Counsel, I'm having a hard time distinguishing Abraham. It seems to me in reading that case that we focused on the capacity in which the individuals who also happened to be directors of the company and members of the administrative committee of the plan, and we said depending on what capacity they were acting in, we might actually have parallel claims here as opposed to ERISA-based ESOP claims. If you recall, Judge, in the Abraham case, there was a separate claim brought under ERISA. The Abraham claim was only the state law corporate claim. Which we said was not preempted. Which you said was not preempted, and it's because there was no ERISA aspect of that case. The only ERISA entanglement in that case is that the individuals who were note holders, who had sold their shares to the ESOP, also then later participated in the ESOP. And what the defendant said in that case is, well, because these note holders are also ESOP participants, then this claim is preempted. And the court said, well, no, no, they're not suing as ESOP participants. What they're suing in is in their capacity as a note holder, and they're suing. So your argument for distinguishing Abraham is that they are acting in their capacity as participants in the plan claiming a breach of fiduciary duty by the plan trustees for failing to preserve the assets of the plan that would otherwise be available to them as... Exactly. Exactly. That is the ERISA claim that they brought, and it's duplicative. It's exactly the same as the double derivative claim that they're seeking to bring. And that's why it's preempted. It's because the ERISA claim that you just described is precisely the same claim  The only way they get to bring that double derivative claim, the corporate law claim, is because they're ERISA participants. That's their only role here is as ERISA. They're not note holders. They don't own shares outside the ESOP. They don't have a separate legal basis to bring the corporate claim. Their only basis is because they're ERISA participants. So if I can carry your argument one step further, then I think it would be logical to conclude that had a demand been made on the ERISA trustees pointing out that they were in breach of their fiduciary duty, it might be likely that they would bring a claim in order to go after the asset. The ERISA fiduciaries were sued for that, Judge. The trustees, my client was a trustee, he was sued for that very claim. That's one of the claims that was settled, including against my client. But who they also could have made demand on, and this is what the district court found, was they could have made demand on other planned fiduciaries like this administrative committee that were not sued in the case, that were not defendants, that would not be essentially suing themselves like my client would have been, but who were standing apart and could have been the recipients of a valid demand and then could have brought the claims on behalf of the ESOP, the derivative claim on behalf of the ESOP, rather than these individuals doing so in a double derivative capacity. If I could turn just briefly to the argument with regard to the motion to amend, I don't know if the announcement by counsel that TLLC, the Tidyman's Limited Liability Company, is dropping all of its claims as an attempt to try to somehow salvage that aspect of the case or not, but if it is, it's way too late at the district court. The court found, of course, that if the amendments were allowed and if the corporate entities were allowed to come in and make these claims, direct claims now against officers and directors, they would be different claims, particularly the TLLC claim would be entirely different. That hadn't been pled, it hadn't been discovered. All of these facts that we briefed, both sides briefed, about the hijacking of the company as we referred to it and whether they actually have the power and authority to represent the companies, all of those facts would have to be discovered. All of this occurred after... I don't understand that, actually. Partly I don't understand it because you used an abbreviation. There are so many cases that I kind of blank out on them. I don't know what you mean by TLLC. The Tidyman's Limited Liability Company. The other thing I don't understand is what's new when a derivative claim turns into a non-derivative claim because the corporation personnel change and the corporation says, okay, we'll bring it ourselves. And the point is they can bring it themselves in state court if they want to. The question is whether they have the absolute right to force the district court. No, they don't have an absolute right. It's a matter of discretion and review for abuse of discretion. But ordinarily amendment is freely allowed and relates back. And it's a little hard for me to understand why there's anything new when as corporate personnel change what was a derivative claim becomes a direct claim. For example, if in the most typical shareholder's derivative claim stock went down from 10 to 8 and that's because you mismanaged in some way. And then the directors are out and the new directors say, yeah, yeah, that's right, we'll bring it ourselves. Let me explain what's new. What was new about these claims that were being proposed? One is the addition of claims, derivative claims, now not just about Tidyman's Management Services, Inc., that corporate entity. They were adding claims on behalf of another corporate entity, Tidyman's Limited Liability Company, which was the joint venture that Tidyman's Management serviced and contributed assets to along with SuperValue contributed assets. If you recall. The new company. Yeah, the new company that was formed. They now, for the first time, are asserting derivative claims or direct claims against the officers and directors of Tidyman's LLC. That was brand new to the case, Your Honor. Had never been asserted, never been alleged. That's the new company or the old company? This is the new company. New company. So they're now essentially saying, and of course that's the company that had the assets. And so they're essentially bringing those claims on behalf of TLLC against the officers and directors of TLLC, brand new. Had never been done in this case before. Thank you, counsel. If I could just also. You're over time, so it's about time to wind up. Thank you very much. I appreciate it. Further questions? No, thank you. Thank you, Your Honor. In my minute, I'd like to respond particularly to the last issue. By dropping the LLC, the new claims, we have to parse out these two entities. There's a corporation, there's an LLC. The LLC's withdrawn its claims here. I mean, the new claims were the LLC. Your Honor, you're exactly right. Nothing changes. Same evidence, same experts. They want to talk about hijacking. They stipulated to my appearance on behalf of this corporation. Okay, so I want to make sure I understand. By dropping the LLC claims, are you withdrawing your challenge to the failure to amend? Yes. I thought I made that clear at the beginning. Well, I think that's what you said. I'm just not sure I was totally tracking. Okay. Same evidence. So you're withdrawing your challenge to the district judge's denial of leave to amend. As to the LLC, the new company with the new claims, the old claims, and the old company, the derivative claims, the nominal plaintiff, that doesn't change. And one other point, and that has to do with this preemption issue, the corporate claims against their own officers and directors are not preempted by ERISA. Period. They're the real party in interest. Thank you, counsel. Thank you. Very briefly in rebuttal, this is not a double derivative claim. My clients had the right to have full, complete, and fair information before they approved the super value transaction. The affirmative vote of two-thirds of my clients were entitled and had to assent to the super value transaction. That information was false at the time of the transaction, and the vote was manipulated so that Mr. Davis could vote the votes for people who abstained. They have a right to complain that they didn't get adequate information. Second, the cases we cite demonstrate that shareholders who obtain their shares in an ESOP have shareholder rights, including the right to assert a derivative action. That's the Hausman case, the Elish case, and the Kelly case, and the Hess case. Now, all those cases interpret Delaware law for their various jurisdictions. Washington follows Delaware law universally in those cases. People who obtain their shares through an ESOP are entitled to assert a derivative action and complain about being defrauded, especially where it's their votes that are required under Washington law. Thank you, counsel. Thank you for your time. Negroni versus Davis is submitted. And we are adjourned for the morning.
judges: Settle, Kleinfeld, Tallman